SLENSBY, by guardian *ad litem,* Respondent, vs. THE MILWAUKEE STREET RAILWAY COMPANY, Appellant.

*January 13 — February 2, 1897.*

*Negligent injury to child by street car: Improper remarks by counsel.*

1. In an action for an injury to a boy two years and seven months of age, by being run over by a street car, the evidence showed that, in some unknown way, he escaped from the yard at his home and started to cross the street in which the railway ran,— at first going behind a coal wagon moving north, and then passing from behind it towards home; that he was struck and injured by a street car about one hundred feet south from the coal wagon and fifteen to twenty feet west from the line of the wagon; that there was nothing within that distance to obstruct the vision of the motorman except one trolley post; that the boy was clearly seen by passengers on the car from the time that he started to cross the street, both before and after he was behind the coal wagon; and that the motorman's attention was called to the boy when he was about fourteen feet from the car, but he did not put on the brake. *Held,* that there was sufficient evidence to support the finding that the motorman ought to have seen the boy in time to have avoided the accident, notwithstanding he testified that he did not see him until he was going under the wheels; and also to sustain the finding that the boy's mother was free from contributory negligence.

2. Improper remarks made by counsel for the plaintiff in addressing the jury, in respect to the reasons why a second trial of the case became necessary, *held* not sufficient ground for disturbing the verdict, where, on objection being made, the jury were instructed to disregard them.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

The case is fully stated in the opinion.

For the appellant there was a brief by *Miller, Noyes, Miller & Wahl,* and oral argument by *George H. Wahl.* They contended that there was no evidence of negligence on the part of defendant, and that the motorman simply failed to choose the best method of avoiding the accident. *Baker v. Eighth Ave. R. Co.* 62 Hun, 39; *Bishop v. Belle City St. R. Co.* 92 Wis. 139.

For the respondent there was a brief by *Toohey & Gilmore,* attorneys, and *Quarles, Spence & Quarles,* of counsel, and oral argument by *John Toohey* and *J. V. Quarles.*

CASSODAY, C. J. This action is to recover damages for being run over by a street car of the defendant. The complaint is in the usual form in such cases. The answer consists of admissions and denials. At the close of the trial, the jury returned a special verdict in favor of the plaintiff, and, from the judgment entered thereon, the defendant brings this appeal.

There is undisputed evidence to the effect that, at the time mentioned, Orchard street, in Milwaukee, ran east and west, and was about sixty-five feet wide, including sidewalks; that Clinton street ran north and south, and crossed Orchard street at right angles; that immediately south of Orchard street, and west of Clinton street, there was a store having a front on Clinton street of about sixteen feet, and running back on the line of Orchard street a distance of forty-nine feet; that south of that store, and about three feet from it, was a double house, having a front on Clinton street, and flush with it, of about thirty feet, and running back thirty-six feet; that between that double house and the store mentioned was a passageway about three feet wide, kept closed by a gate; that immediately south of the double house, and

between it and a cottage, was a narrow passageway, kept closed by a gate; that the parents of the plaintiff, at the time in question, lived in the south half of the double house, and their children were in the habit of playing in the back yard, which was usually kept closed by gates; that Clinton street was seventy-six feet wide, including sidewalks, and fifty-two feet wide between the sidewalks; that on the east side of Clinton street, and 125 feet south of the south line of Orchard street, there was a grocery store; that the north line of that store was about seventy-five feet south of the south line of the double house projected; that the defendant's street-car line was located on Clinton street,— having double tracks thereon; that the sidewalk on each side of that street was twelve feet wide; that between each sidewalk and the nearest rail was about seventeen or eighteen feet; that each railway track was less than five feet wide, and that the distance between the two tracks was about five feet; that between the two tracks and about fifty feet south of Orchard street was a trolley post,— the same being in line with the south line of the double house projected; that about ten or eleven o'clock on the forenoon of July 12, 1894, the plaintiff, who was at that time about thirty-one months of age and still wore dresses, had escaped from his home in some way not accounted for, and was seen at the front of the grocery store on the east side of Clinton street, mentioned, in the act of climbing down from the sidewalk into the street; that just then a team drawing a coal wagon, with three tons of coal thereon, came from the south on the east side of the east track; that at first the little boy, "*Leo*," as he was called, started to cross the street, and go towards his home, in front of the coal team, but suddenly stopped, and then proceeded to cross from behind the coal wagon, and continued to go in the direction of his home until he reached the west car track, when he was struck by a car running south on that track, at a point about sixty-six feet south of

Orchard street, and about seventeen feet south of the trolley post, and about seventy feet from the northwest corner of the grocery store where he was first so seen.

The special verdict is to the effect that the mother of *Leo* exercised ordinary care and prudence in taking care of him, and preventing him from going on the street upon which he was injured; that it was dangerous for a child of his age to go unattended upon and across the street, with cars passing and repassing; that the motorman, by the exercise of ordinary care, ought to have seen *Leo* in time to have avoided the accident; that the failure of such motorman to see him in time to have avoided the accident was not the proximate cause of the injury; that the motorman, after he saw *Leo*, did not use such means to prevent the injury as a motorman of ordinary care and prudence would have used under the same circumstances; that such omission on the part of the motorman was the proximate cause of the injury; that the brake of the car in question was not out of repair at the time of the accident to such an extent that the car could not be stopped by a motorman in the exercise of ordinary care and prudence, within the usual and ordinary time and distance; that the defendant was guilty of a want of ordinary care, which was the proximate cause of the injury; that they assessed the plaintiff's damages at $11,000.

The motorman testified, among other things, to the effect that his motors were good; that, when he was north of Orchard street crossing, he saw some children playing in the gutter and on the sidewalk, on the west side, and that he then was going about six miles an hour, and immediately cut off the power, and let the car drift; that he passed the coal wagon just about at the trolley post; that he noticed a little girl on the west side, motioning with her hands; that he glanced to the east, and saw *Leo* on the rail, going under the car; that he immediately set his brake, but did not reverse his motor, because *Leo* had dresses on, and that, if he

Slensby vs. The Milwaukee Street R. Co.

got caught in the gear, he would have been mangled, and in going at that speed there was a chance for stripping the gear. The driver of the coal wagon, among other things, testified to the effect that he heard the alarm as the car was passing him, and that he looked around, and that *Leo* was eighteen or twenty feet from the car; that he then stopped his wagon, so that the front feet of his horses stood on the south corner of Orchard street; that his team and wagon were about twenty-six feet in length. According to his testimony, his wagon must have gone a distance of nearly 100 feet while *Leo* went from the rear of the wagon to the point where he was struck by the car. The team and wagon moved north on a line some fifteen or twenty feet east of the east rail of the track on which the car was moving south, and within that space the vision of the motorman was necessarily unobstructed, except by the trolley post, and that such space necessarily broadened as the wagon moved north, and the car moved south. The testimony of ladies on the car tended to prove that, at or before crossing Orchard street, they saw *Leo* when passing from the sidewalk to the street in front of the grocery store, and they afterwards saw him in the street, after he passed from behind the wagon, and between the east track and the east curb of the street.

There is plenty of evidence to support the finding that the motorman ought to have seen *Leo* in time to have avoided the accident, but they found that his failure to see him earlier was not the proximate cause of the injury. They failed to find just where *Leo* was with respect to the car when the motorman first saw him; but they do find that, after he did see him, he failed to exercise ordinary care to prevent the injury, and that such failure was the proximate cause of the injury. This finding is, as we think, supported by the evidence. There is evidence tending to prove that *Leo* was about fourteen feet from the car when the little girl mo-

Slensby vs. The Milwaukee Street R. Co.

tioned to the motorman as he testified. Certainly, the jury were not bound to accept the motorman's statement as to just where *Leo* was when he first saw him, regardless of the other evidence and circumstances in the case. *Jambor v. State*, 75 Wis. 669 *et seq.*

The finding of the jury to the effect that *Leo's* mother was free from contributory negligence seems to be supported by the evidence. This being so, the question of imputed negligence is not in the case.

There was no error in refusing to submit to the jury the question whether the back yard of the house of *Leo's* parents was sufficiently inclosed to prevent his escape. It was an evidentiary fact at most, properly to be considered in determining the question of the mother's contributory negligence.

Exception is taken because, in closing the argument, counsel for the plaintiff used the following language: "As the evidence shows, this is the second time we have appeared in behalf of this unfortunate little sufferer, and the reason why we are here now was that an incautious and careless answer was made by the jury, who all the time intended to look after and protect the rights of both parties. They were honest. They simply made a mistake in answering a question in this special verdict, which the technicality of my friend renders necessary. There is a chance, you know, that a jury may answer the questions so as to furnish a loophole for the railroad company, and that is why they want a special verdict. Now, I will ask you to exert great care and discrimination, as I know you will, in answering these questions, because we do not wish for a third time to be obliged to come to a jury to establish a contention as plain and free from difficulty as this is." As soon as the defendant excepted to the remarks quoted, the court said: "So far, gentlemen of the jury, as any remarks were made by plaintiff's counsel as to the reason why a second trial of this case became necessary, those remarks you will disregard entirely, and con-

sider as not made in the case." Besides, it appears that the counsel for the defendant, in addressing the jury, had already discussed at length the fact that corporations were unpopular with juries, and the reasons therefor. The province of counsel in such matters has frequently been stated by this court, and it is unnecessary to repeat them here. *Baker v. State*, 69 Wis. 40; *Barczynski v. State*, 91 Wis. 415.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.